UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| ISAAC SCOTT BLANTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.: 4:15-cv-14-HSM-WBC |
| | ) |
| BEDFORD COUNTY SHERIFF'S DEP'T, | ) |
| SHERIFF AUSTIN SWING, BEDFORD | ) |
| COUNTY JAIL, BEDFORD COUNTY, | ) |
| TENNESSEE, MAYOR EUGENE RAY, | ) |
| and EX-SHERIFF RANDAL BOYCE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

Isaac Scott Blanton, a prisoner in the Northeast Correctional Complex in Mountain City, Tennessee, filed this *pro se* civil rights suit for monetary relief under 42 U.S.C. § 1983 in the United States District Court for the Middle District of Tennessee, which assessed the filing fee [Docs. 1, 16]. The complaint alleged unconstitutional conditions of confinement at the Bedford County jail, where Plaintiff had been previously confined. Bedford County lies within the Winchester Division of the Eastern District of Tennessee. Therefore, based on venue, the case was transferred to this Court [Doc. 16].

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).

*See also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

Under the Prison Litigation Reform Act (PLRA), district courts must screen prisoner complaints and sua sponte dismiss those that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g., Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

> Responding to a perceived deluge of frivolous lawsuits, and, in particular, frivolous prisoner suits, Congress directed the federal courts to review or "screen" certain complaints sua sponte and to dismiss those that failed to state a claim upon which relief could be granted, that sought monetary relief from a defendant immune from such relief, or that were frivolous or malicious.

*Id*. at 1015-16 (6th Cir. 1999) (citing 28 U.S.C. §§ 1915(e)(2) and 1915A).

This complaint was not screened prior to the transfer and, therefore, the Court must perform this task, recognizing that *pro se* pleadings are to be generously construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The standard articulated by the Supreme Court in *Iqbal* and *Twombly* "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

2

The Court examines the complaint in light of these standards and addresses the claims alleged against each named Defendant since this is the manner in which Plaintiff framed his pleading.

**I.     Claims against the Bedford County Jail**

   **A.** On November 26, 2013, Plaintiff was "housed in a cell with a hole in the wall/window exposing [him] to open climates."

   **B.** From November 26, 2013, to "the present," Plaintiff was exposed to overcrowded conditions. Inmates were sleeping on the floor with no mat or in a boat six inches from the floor. At times, as many as thirty-one inmates shared a pod designed to house twenty prisoners.

   **C.** Bathrooms and living quarters contained mold and rust. In September of 2014, the mold was painted over, but no attempt was made to remove it.

   **D.** Food was served cold on trays, and some of it was prepared the day before it was served. Only two "hot" meals were served daily.

   **E.** Kitchen workers were not tested for diseases.

   **F.** Kitchen equipment was in poor condition and it was rusted and contained roaches. Food was stored in areas of infestation.

   **G.** There was no formal grievance system.

   **H.** Fire codes were violated and safety issues existed. For example, the bathroom contained exposed electrical conduit.

   **I.** Programs and classes were unavailable for state inmates, and inmates were denied parole due to the lack of completion of programs.

   **J.** There were no medical services for state inmates and they were charged for nurse

3

visits. Taken off psychiatric medication on November 26, 2013, because the facility does not give psychiatric medications.[1]

K. No dental services were provided, unless an inmate's family or friends could pay for an appointment to an outside facility.

L. No medical response was given to "addressed issues." Inmates were not allowed to be seen by a doctor. In August of 2014, a nurse said that the medical issue should "eventually" work itself out.

M. State inmates were not offered recreational or exercise opportunities.

N. Legal mail was opened and read before an inmate received it.

O. State inspectors are not and were not conducting proper inspections.

P. State funds were misused.

Q. The caloric content of the food served to inmates was insufficient. In one month, ten pounds were lost.

R. State inmates were housed with unsentenced county inmates.

S. All the conditions alleged above violated the civil rights of state inmates. The facility was not in compliance with state rules and regulations.

T. No light was provided in the bathroom at night.

U. No hot water was provided for showers or the sink from 8:00 a.m. to 6:00 p.m.

V. Requests to use the law library were denied.

W. Inmates' hands got caught in the bathroom door because there was no inside door

---

[1] The Court pauses to explain the use of the passive voice in framing the latter part of this claim and Claims "L" and "Q". Two Plaintiffs filed this case, but one was dismissed and only one remains. There is no indication in this allegation or in Claims "L" and "Q" as to the identity of the prisoner who suffered the asserted deprivation(s), whether that individual was one of the two initial Plaintiffs or another inmate at the jail.

handle [Doc. 1 p. 7-10].

At the outset, the Bedford County jail is not a suable entity within the meaning of 42 U.S.C. § 1983. *See De La Garza v. Kandiyohi County Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (stating that neither a county jail nor a sheriff's department is a suable entity); *Cage v. Kent County Corr. Facility*, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that the "jail facility named as a defendant was not an entity subject to suit under § 1983"). Accordingly, any contentions against the Bedford County jail fail to state a claim upon which relief may be granted.

Furthermore, all or nearly all claims are of a general nature and, seemingly, have been asserted on behalf of Plaintiff's former fellow inmates in the Bedford County jail. For the most part, Plaintiff has not indicated how these alleged deprivations or untoward conditions have caused him personal injury. This failure implicates the standing doctrine, which derives from Article III's restriction of federal court jurisdiction to "cases and controversies." U.S. CONST. art. III, § 2, cl.1.

A plaintiff establishes standing, if he demonstrates three things: (1) an injury in fact or a harm that is "actual or imminent, not conjectural or hypothetical," (2) causation, and (3) redressability. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (citations omitted). Here, there is no injury in fact.

Absent a plea of personal harm, Plaintiff has failed to satisfy the first element. Therefore, Plaintiff has not shown that he has standing to pursue the claims which alleged harm to the general population of inmates at the Bedford County jail. *See ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007) (observing that the standing doctrine "applies to every claim sought to be litigated in federal court"). Typically, a prisoner has standing to assert his own

5

Eighth Amendment rights, but not those of other inmates. *Whitmore*, 495 U.S. at 161.

## II. Claims Against Sheriff Austin Swing

    **A.** This Defendant misused state funds and improperly managed the Bedford County jail.

    **B.** This Defendant failed to respond to requests to change or fix problems in the jail.

    **C.** This Defendant violated the civil rights of state inmates by failing to abide by state regulations and codes.

    **D.** Improper safety procedures were used in the jail, such as the absence of exit signs, fire drills, and mapped escape routes for fire or emergencies.

    **E.** The jail did not provide programs or classes for state inmates seeking to obtain parole.

    **F.** This Defendant did not address inmate overcrowding nor resolve the problem by shipping state inmates to prison [Doc. 1 p. 9-10].

Again, Plaintiff's claims against Defendant Sheriff Swing appear to be asserted on behalf of other inmates. He lacks standing to advance those claims. *Whitmore*, 495 U.S. at 161.

Even if Plaintiff had standing to pursue these allegations, he has failed to state viable § 1983 claims. Courts have held that "[t]he alleged theft or misuse of jail funds does not establish a violation of an inmate's constitutional rights sounding in § 1983." *Knight v. Montgomery Cnty. Jail*, No. 3:15-CV-00309, 2015 WL 1549275, at *3 (M.D. Tenn. Apr. 8, 2015).

Also, Plaintiff's theory that Defendant Swing is liable to him because Defendant bears overall responsibility for proper management of the Bedford County jail rests on a theory of respondeat superior, or a defendant's right to control employees. However, liability under § 1983 will not lie simply because a defendant "employs a tortfeasor." *Monell v. Dep't of Soc.*

6

*Servs. of City of New York*, 436 U.S. 658, 691 (1978).

Likewise, a supervisor cannot be held liable for a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (stating that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983). Yet, Plaintiff can still hold this Defendant liable so long as he can demonstrate that the Sheriff implicitly authorized, approved, or knowingly acquiesced in any alleged wrongdoing on the part of his subordinates. *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989). No such demonstration has been made.

Also, the failure of a prison official to review favorably a grievance provides no basis for section 1983 liability, *see Ramsey v. Martin*, 28 F.App'x 500, 502 (6th Cir. 2002), and "the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983." *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010); *see Harrill v. Blount Cnty. Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995) (observing that "[a] state statute cannot 'create' a federal constitutional right").

Additionally, the claim concerning the lack of emergency signage and fire drills at the jail does not include an allegation that Plaintiff suffered any compensable injury, or any injury whatsoever, as a result of these purported unlawful conditions. In other words, Plaintiff has not "stated simply, concisely, and directly events that, [he] alleged, entitled [him] to damages from the [defendants]," as he is required to do to make out a plausible constitutional claim. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam).

Finally, inmates have no constitutional entitlement to be provided with or to participate in

educational or vocational programs while incarcerated. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (holding that prisoners have no constitutional entitlement to educational or vocational programs in a correctional facility).

### III. Claims Against Bedford County, Tennessee

    **A.** The County misused state funds or improperly used federal funds.

    **B.** The County covered up financial spending [Doc. 1 p. 11].

The allegations that state funds have been misused, for reasons explained earlier, fail to state a constitutional claim. The contentions regarding misspent federal funds and a cover-up involving financial spending are conclusory, as they lack any supporting assertions of fact. Conclusory allegations do not state a claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1987))); *Cline v. Rogers*, 87 F.3d 176, 184 (6th Cir. 1996) (instructing courts not to suppose that a plaintiff would be able to show facts not alleged or that a defendant has violated the law in ways not alleged).

### IV. Claims Against Mayor Eugene Ray

    **A.** The Mayor misused state funds or improperly used federal funds [Doc. 1 p. 11].

Plaintiff's contentions involving the misuse of state or federal funds fails to state a § 1983 claim against Defendant Ray, for reasons set forth earlier in this opinion.

### V. Claims against Former Sheriff Randal Boyce

    **A.** The former Sheriff misused state funds or improperly used federal funds.

    **B.** The former Sheriff violated the civil rights of state inmates by not following state regulations and codes.

C. The former Sheriff did not deal with overcrowding at the jail and did not ship state inmates to prison.

D. The former Sheriff did not provide programs or classes for state inmates seeking to obtain parole [Doc. 1 p. 11-12].

Given the prior discussion of law and analysis of the same claims asserted against other Defendants, the Court finds that none of Plaintiff's assertions against Defendant Boyce state a viable § 1983 claim against him.

In sum, Plaintiff lacks standing to assert the claims contained in his complaint or the claims asserted therein fail to state viable claims which would entitle him to relief under § 1983. Thus, this case will be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

Finally, this Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a)(3) and hereby **CERTIFIES** that any appeal from this action would not be taken in good faith. Accordingly, if Plaintiff files a notice of appeal, he must also submit an application for leave to proceed *in forma pauperis* on appeal, a certified copy of his inmate trust account statement, and a financial affidavit. 28 U.S.C. § 1915(a)(2).

## AN APPROPRIATE JUDGMENT WILL ENTER.

 */s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE